UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JO ANN KLINK                                :
                                            :
        v.                                  :        C.A. No. 04-410A
                                            :
JO ANNE B. BARNHART, Commissioner, :
Social Security Administration              :

## MEMORANDUM AND ORDER

        This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Supplemental Security Income

("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed her

Complaint on September 22, 2004 seeking to reverse the decision of the Commissioner.  Plaintiff

has filed a Motion seeking to reverse the Commissioner's decision and remand for further

proceedings under sentence four of 42 U.S.C. § 405(g). The Commissioner has filed a Motion to

Affirm her decision.  With the consent of the parties, this case has been referred to me for all further

proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P.

73.  Based upon my review of the entire record, my independent legal research, and the legal

memoranda filed by the parties, I find that there is substantial evidence in this record to support the

Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.

Consequently, I order that the Commissioner's Motion to Affirm (Document No. 12) be GRANTED

and that Plaintiff's Motion to Reverse and/or Remand (Document No. 9) be DENIED.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits on April 25, 2001 alleging disability since March 25, 1995. (Tr. 95-97). The application was denied initially (Tr. 64-67) and on reconsideration. (Tr. 72-75). Plaintiff previously filed an application on July 30, 1996, which was denied on September 19, 1996 and is not eligible for further review. (Tr. 17). On May 8, 2003, a hearing which was held before Administrative Law Judge (the "ALJ") Barry H. Best, at which Plaintiff, represented by counsel, and a vocational expert, testified. (Tr. 26-59). The ALJ issued a decision on December 10, 2003, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 14-25). The Appeals Council denied Plaintiff's request for review on July 30, 2004 (Tr. 8-10), rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the Commissioner's decision should be reversed because the ALJ improperly failed to apply the regulatory analysis required by 20 C.F.R. § 416.920a in evaluating the severity of Plaintiff's mental impairments. Plaintiff also argues that the ALJ improperly failed to explain why he was not crediting opinions from state agency medical consultants indicating that Plaintiff had reaching limitations. Finally, Plaintiff argues that the ALJ's mental residual functional capacity ("RFC") assessment is not based on substantial evidence and that the Commissioner failed to meet her "Step 5" burden of proving that there is work in the national economy that Plaintiff could perform. The Commissioner disputes Plaintiff's claims of error and argues that there is substantial evidence in the record as a whole to support her decision that Plaintiff is not entitled to disability benefits.

## III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for

failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.    DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.   Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).   The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.   See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).   The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.   Id.   However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.   See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.   Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.   20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).   In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.   Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.   The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.   See 20 C.F.R. §§ 404.1520, 416.920.   First, if a claimant is working at a substantial gainful activity, she is not

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's

statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must

articulate specific and adequate reasons for doing so, or the record must be obvious as to the

credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly

articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829

F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d

24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when

credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352

(11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination

is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the

implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d

1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V.    APPLICATION AND ANALYSIS

Plaintiff was forty-one years old on the date the ALJ issued his decision. (Tr. 95).  Plaintiff

testified that she was living with her "boyfriend" in a townhouse in the Federal Hill section of

Providence. (Tr. 32, 36).  She indicated to the ALJ that her father bought the townhouse for her and

her parents, who live in Rhode Island, have been "taking care of [her] completely, pay[ing] all [her]

bills and all [her] needs." (Tr. 44).   Plaintiff is divorced and has a teenaged son who lives out of

state with his father. (Tr. 31-32, 44). She was in training as a chef/sommelier when she sustained

a neck injury in 2000. (Tr. 102). She has a college degree with additional training as a chef. (Tr.

29, 108). Plaintiff testified that her past work experience includes work as a caterer, wine steward,

bartender, cocktail waitress, assistant restaurant manager, cosmetician, promotions person, model,

actress and, on one occasion, professional wrestling manager. (Tr. 30, 33, 50-52). Plaintiff's

computational earnings report shows a total of only $13,269.75 from 1979 to 2002 and a total of only

$3,557.38 between 1991 and 2002. (Ex. 2D; Tr. 98-100). Based on this evidence, the ALJ

determined that Plaintiff had "no past relevant work" and that she "apparently has never worked at

substantial gainful activity levels." (Tr. 17, 23).

A.   **The ALJ's Failure to Explicitly Follow the Regulatory Analysis for Evaluating Mental Impairments Amounts to Harmless Error When Viewed Against the Entirety of the Record.**

The ALJ found that Plaintiff had severe impairments, consisting of an orthopedic neck

disorder, anxiety disorder and personality disorder, but that her impairments did not meet or equal

the severity of any impairment listed in the Commissioner's Listing of Impairments, 20 C.F.R. Part

404, Subpart P, Appendix 1. (Tr. 18, 24 at Findings 2 and 3). Further, the ALJ determined that

Plaintiff retained the RFC to perform a wide range of light exertion with neck movement limited to

one-half normal range of motion, and moderate impairments in (1) maintaining attention and

concentration; and (2) the ability to deal appropriately with the public, co-workers or supervisors.

(Tr. 22, 24-25 at Finding 6). Plaintiff contends that this case should be remanded because the ALJ

failed to comply with the "special technique" required under 20 C.F.R. § 416.920a in assessing the

severity of Plaintiff's mental impairments and failed to adequately consider medical source opinions

regarding Plaintiff's mental impairments in assessing her RFC.

-12-

As Plaintiff correctly notes, in evaluating a claimant's alleged mental impairments, the ALJ is required to follow a "special technique" outlined in 20 C.F.R. § 416.920a. Pursuant to the technique, the ALJ must determine whether or not Plaintiff's impairments are "severe" by rating the functional limitation which results from the impairment(s) in four specific areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 416.920a(c)(3)-(4), (d). While this Court is troubled by the ALJ's failure to follow a mandatory regulatory review procedure, several courts in this Circuit have found that the failure to explicitly follow the prescribed technique is "harmless error" if the record otherwise supports the ALJ's conclusion and a remand would not "change, alter or impact the result." See, e.g., Arruda v. Barnhart, 314 F. Supp. 2d 52, 79-81 (D. Mass. 2004). See also Querido v. Barnhart, 344 F. Supp. 2d 236, 250-54 (D. Mass. 2004). Because of efficiency concerns, this Court sees no benefit in a meaningless remand and agrees with and adopts the standard articulated above, which reviews whether remand would change, alter or impact the result. Even Plaintiff agrees with this standard of review to some extent by citing to Moore v. Barnhart, 405 F.3d 1208 (11th Cir. 2005). In Moore, the Court held that failure to follow a required regulatory review process requires remand but only when the record contains a no "colorable claim" of mental impairment. Id. at 1214.

While it is true, as Plaintiff argues, that the ALJ did not specifically list a rating for each of the four specified functional areas, he explicitly listed the significant number of daily activities in which Plaintiff was involved, including cooking, cleaning, managing her finances, visiting family, and drying flowers. (Tr. 20-22). The ALJ also noted that Rhode Island Hospital psychiatry records dated April 17, 2003 indicate that Plaintiff was traveling to and from Manhattan to participate in a jury trial regarding her "accident" and, other than her lawyer "breathing down her neck," "enjoyed"

being there. (Tr. 254). While these findings were made with respect to Plaintiff's RFC, they still provide the required ratings for Plaintiff's daily activities, social functioning, and concentration, persistence, or pace. See Querido, 344 F. Supp. 2d at 251-252; see also Arruda, 314 F. Supp. 2d at 79 (stating, "[a]lthough discussed in connection with [the claimant's] residual functional capacity, the findings provide the necessary ratings for the functional areas....").

Although the ALJ made no rating with respect to episodes of decompensation, there is no medical opinion in the record that would indicate numerous extended episodes of decompensation. Given this lack of evidence, the ALJ's failure to explicitly discuss this functional area was harmless. See Querido, 344 F. Supp. 2d at 253-254. Dr. Stuart Gitlow performed a consultative psychiatric examination on November 20, 2001. Ex. 5F. Doctor Gitlow found no evidence of psychotic symptoms and notes that Plaintiff's "emotional condition is one of frustration and anger more than depression" and that she "did not present as being particularly anxious today." (Ex. 5F; Tr. 150). He concluded that Plaintiff had not yet "come to terms" with her medical situation. (Tr. 151). Doctor Gitlow concluded that Plaintiff is able to understand, carry out and remember instructions, and to respond appropriately to supervision, coworkers and work pressures. Id. Moreover, the record contains two PRTF evaluations from state agency professionals. (Exs. 7F and 10F). Neither of the professionals found marked limitations in any of Plaintiff's functional areas, and both noted that Plaintiff had no episodes of decompensation of extended duration. (Tr. 166, 195). See Palmer v. Barnhart, 2004 WL 2862161, at *3 (D. Me. 2004) (finding harmless the ALJ's failure to follow the prescribed technique for evaluating mental impairments because the record contained two PRTF evaluations that supported the ALJ's non-severity finding). In fact, one of these professionals concurred with Doctor Gitlow that Plaintiff was "frustrated more than depressed." (Tr. 197).

Here, in reaching his RFC determination, the ALJ appropriately considered all the evidence of record and reasonably assessed Plaintiff to have moderate impairments both in maintaining attention and concentration, and in the ability to deal appropriately with the public, coworkers or supervisors. (Tr. 22, 25 at Finding 6). The ALJ concluded that Plaintiff's allegations regarding her limitations were not "entirely credible" and appropriately detailed the basis for his conclusion. (Tr. 22, 24). The ALJ's RFC finding is supported by substantial evidence of record.

**B.     Substantial Evidence Supports the ALJ's Finding that Plaintiff Had the RFC to Perform Light Exertion with Limitations as to Neck Movement.**

Plaintiff contends that the ALJ erred by failing to provide reasons for rejecting the opinions of two non-examining medical consultants (Edward R. Hanna, M.D. and Stephen R. Fish, M.D.) who concluded that Plaintiff's ability to reach was "limited." (Exs. 3F and 11F; Tr. 141, 203). In his RFC assessment, Doctor Hanna provided absolutely no description of the claimed reaching limitations or factual support for that conclusion as directed by the instructions on the physical RFC assessment form. (Tr. 141). Although Doctor Fish offers some description – "limit frequent overhead reaching" – (Tr. 203), he also failed to provide any factual support for this narrow limitation as instructed. Id. Finally, both of these doctors indicated on the same form that Plaintiff could carry/lift up to twenty pounds and otherwise had no limitation on pushing or pulling including use of hand controls. (Tr. 139, 201). This hardly seems consistent with a significant reaching limitation.

Furthermore, Doctors Hanna and Fish proffered their assessments on November 2, 2001 and April 2, 2002, respectively. (Exs. 3F and 11F). The ALJ's ultimate determination as to physical RFC was made over one year later and is based on the entirety of the record including subsequent

medical records. (Tr. 24 at Finding 5). Further, it is based on the ALJ's assessment of Plaintiff's credibility after personally observing her testimony and reviewing the entire medical history. (Tr. 24 at Finding 4). As to credibility, the ALJ based his determination in part on indications that Plaintiff had engaged in manipulative narcotics-seeking behavior and "symptom exaggeration." (Tr. 225-26, 241). See Moore, 405 F.3d at 1213. (In making RFC assessment, ALJ properly looked to notations of "embellished and magnified pain behaviors, as well as drug seeking manipulative tendencies" in claimant's medical records.) For instance, on July 11, 2002, Michael Cohen-Uram, M.D., indicated that Plaintiff reported to him that she was not able to support her neck without a neck brace. (Tr. 226). However, Doctor Cohen-Uram reported that "on a fairly prolonged physical examination she had no difficulty maintaining her neck in an erect position." Id.

The ALJ did not err in failing to give specific reasons for rejecting the reaching limitations proffered by Doctors Hanna and Fish. As noted above, these limitations were not adequately described or supported in the reports of these non-examining medical consultants. The only limit described was for "frequent overhead reaching." (Ex. 11F; Tr. 203). The ALJ's failure to expressly analyze the assessments of Doctors Hanna and Fish is, at worst, harmless error based on the entirety of the record in this case. This is not a case where the ALJ rejected detailed and supported limitations and found that the claimant could perform at the heavy exertion level. Rather, the ALJ determined that Plaintiff was limited to work at the "light exertion" level with "neck movement limited to one-half normal range of motion." (Tr. 24). The ALJ conducted a thorough analysis of the record as a whole, and his physical RFC finding is supported by substantial evidence of record.

**C.     The ALJ Properly Concluded that the Commissioner Met Her "Step-Five" Burden.**

Because he concluded that Plaintiff has "no past relevant work," (Tr. 23), the ALJ decided this case at step five. See 20 C.F.R. § 416.920(a)(4)(v).  At step five, the burden of proof shifts to the Commissioner to establish that Plaintiff could perform other work that exists in the national economy. Seavey, 276 F.3d at 5.  In making this determination, the ALJ must develop a full record regarding the vocational opportunities available. Allen, 880 F.2d at 1201.  In this case, because the ALJ found that Plaintiff had moderate non-exertional (i.e., mental) impairments, the ALJ properly utilized the services of a vocational expert. See Heggarty, 947 F.2d at 996.

Plaintiff argues essentially that the ALJ was given a flawed hypothetical which did not take all of Plaintiff's physical and mental limitations into account. This Court disagrees. As noted above, this Court concludes that the ALJ properly discounted the reaching limitations proffered by the non-examining medical consultants, and his mental RFC assessment was supported by substantial evidence of record.  Plaintiff further contends that the ALJ failed to "properly consider" the opinion of John Parsons, Ph.D., who performed a psychological assessment at the request of Plaintiff's attorney. (Ex. 12F).  Although Plaintiff may disagree with the conclusion, the record supports that the ALJ thoroughly reviewed and discussed the report of Doctor Parsons. (Tr. 20-22).  The ALJ appropriately exercised his discretion to discredit Doctor Parsons' findings to the extent that they "were not supported by or consistent with observations by treating physicians." (Tr. 22).  The ALJ noted that Doctor Parsons appeared to have made "some effort to accommodate" Plaintiff by taking her reports at face value. Id.  The ALJ, however, noted that the record contained evidence of past

"symptom exaggeration" and that he found Plaintiff's reports to Doctor Parsons to appear to be "exaggerated" when viewed against the entirety of the record.

The hypothetical was not flawed.  The ALJ properly relied upon the VE's testimony in determining that Plaintiff "is capable of making a successful adjustment to work that exists in significant numbers in the national economy" given her age, education, work experience and RFC. (Tr. 24).  His "step-five" finding that Plaintiff was not disabled is supported and should be affirmed.

## VI.    CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion to Affirm (Document No. 12) be GRANTED and that the Plaintiff's Motion to Reverse and/or Remand (Document No. 9) be DENIED.  Final Judgment shall enter in favor of the Commissioner.

LINCOLN D. ALMOND
United States Magistrate Judge
July 7, 2005

-18-